Good morning, Your Honor. Michael Tutero. Because of the nature of how this is coming up procedurally, I'm going to reserve five minutes for a rebuttal to respond to the secured claim argument that the U.S. trustee is going to make because I don't know what she's going to say. And I'll address the totality of the circumstance argument that we raised on our direct appeal. It's kind of in the nature of a cross appeal. Let's see if we can get this focused. Under the pre-Bap-Sepa law, to do what the bankruptcy judge did here required a finding of substantial abuse. Is that correct? That's correct. And the statute was changed to read after Bap-Sepa to read abuse. Correct. Does that impact the case law that arose under the old statute in any way? Well, it may impact the case law. And the old case law said it was perfectly appropriate for a bankruptcy judge to consider future ability to pay. I agree. I think it does impact it in the sense that because of the means to weigh everything that comes up, there's a couple of critical findings here that underlie that question. The critical findings are, first of all, is that there was no bad faith either under 707B2 or B3. There was a finding by the trial court. Second of all is that the trial court determined that it would be an unjust result if the case was dismissed given what Mr. Edberg had done in his past to try and alleviate going into the bankruptcy process. He had taken out the loans 31 months earlier, paid off a lot of his debts, became unencumbered again. So he actually used all of his retirement money to pay those debts, fell behind again, and then filed the bankruptcy. So there was no bad faith. There was an unjust type of result for dismissal. And also all of the facts are undisputed here. So now we come to the question, the problem with the means test. The problem I have here is that he was upside down on I and J when we filed. I didn't have – I pared down that budget to bare bones. Can you tell me what it means? I'm sorry? You're speaking bankruptcy talk. Oh, I'm sorry. I apologize, Your Honor. Schedule I and J is the income and expenses. At the time of filing the petition, he was $250 upside down, which means his expenses were $250 more than his income. And I had already – If you plug in the repayments on a lot. Exactly. And I had already pared down his expenses to the bare bones. I didn't have anything else to pare down. There was some reference in the record to this timeshare that he was surrendering, but I had already eliminated that from the budget entirely. So there was no allowance for that payment. How far off was he from the full repayment of the 401K loan? 17 months. At the time the bankruptcy judge decided? At the time the case was filed. How about at the time the bankruptcy judge decided? Well, that was only a couple months later, so probably 15 months at that time. I'm not quite sure on the timing of that because we had some continuum. You were in the neighborhood of a year and a half. Yes, I would say that. And that's part of what bothers me. See, the bankruptcy court sits as a court of equity, so the totality of the circumstance is not just one or two things that are finite in terms of amounts and dollars, but you have to look at the whole picture. Aren't you arguing a sort of hard-line position that the considerations that go into the means test can't be the circumstances that you're talking about, that it has to be something else? Well, I think it's a combination. I think we take the means test for what the actual expenses are that the government allows, but if we satisfy the means test, which we did in this case because of the payment, and agreed it was because of the 401K payment, we satisfied the means test. If you remove the payment, that's fine. That gets us back to actually the argument on the secured debt, and I want to kind of focus on this totality argument right now. The underlying fact that bothers me the most here, and this is why we took the appeal, is that there is no end in sight. There needs to be a final point of how far in a Chapter 7 case the trial court should look ahead, and I put some examples in my brief. What if we have a couple who has a lot of extra medical expenses for a terminally ill parent? Now, are we going to say that, well, that parent is going to die in a year, So, therefore, pay your $10 now, and then in a year when the parent dies, well, you know, make up the rest in your Chapter 13. One is that the sick parent is a statutory goes statutorily into the means test or could, and secondly, that it's obviously not determined in the same way that the end of this loan is. Well, but that's not the only factor. What if we have a minor child who is going to be emancipated at 18, is not going to school, and will not be a dependent? What's going to happen then? Do we hold the person in the Chapter 13 for one year, two years, three years? Lots of hard cases ahead for some judges to deal with, but these aren't the facts of your client's case. No, they aren't. We have a very finite, in this case, the decision from the bankruptcy court says that as of September of the following year, it's paid off. I agree. So we don't have all these cases of uncertainty about the wondering and projecting to the future and who's going to live how long and so forth. We have a known duration for a known obligation. And I understand that, but this court doesn't decide cases in a vacuum, and the practical effect of a court's decision in letting the trial court go out a year and a half, two years, or whatever, is going to impact every bankruptcy case as it comes down. Because the trustee is going to take the holding in that case and say, we can expand it to here if we want to. Well, it's a tough argument to say because something bad might happen in another case that doesn't exist here. We ought to rule, in this case, the way you want because something bad might happen over there. We've got to deal with the facts of this case. In this case, we know, unlike the examples you've given us, we don't have the uncertainty. And maybe that's one key distinction. You should offer up a hypothetical that doesn't have that kind of uncertainty. If we didn't know this was going to be paid off in a little more than a year, we might have a different reaction to it. All right. The child who's 17 who's going to turn 18 in six months. Okay. Can we allow the trial court to look ahead six months? I know maybe six months is okay. Maybe a year is okay. Maybe a year and a half is okay. Is two years okay? No, maybe not. You said you wanted to save some time, and you're down to three minutes. Yes, I'd better because I don't know what their argument is going to be. Okay. Thank you. May it please the Court, my name is Kelsey Brown Corker, and I'm here on behalf of the United States trustee. The Bankruptcy Court correctly determined that the debtor's financial circumstances demonstrate abuse under the totality of the circumstances inquiry of Section 707B3. I'm not hearing you very well. Oh, sorry. Is that better? I think so. Okay. And we certainly think it would be appropriate and proper for this Court to affirm the dismissal on that ground. However, because the means test inquiry of Section 707B2 is a threshold determination, we also think it would be appropriate for this Court to affirm on the alternative ground that dismissal is warranted under Section 707B2. And there are many, many issues that were addressed in the briefs here, but the basis for dismissal under 707B2 is pretty simple, and that is that a 401k loan is not a debt within the meaning of the Bankruptcy Code. It's not a secure debt. It's not a debt. It's not a debt at all, I think, is the first place you look. And that's because an overwhelming majority of courts have found this, including the Second and Sixth Circuits. A debtor who takes out a 401k loan is simply withdrawing money from his own savings account. The only purpose of labeling it as a loan and having a repayment plan in place is to avoid the tax consequences of an early withdrawal from a retirement plan. So if the debtor is borrowing money from anyone, he's borrowing money from himself. The plan administrator is administering the plan in order to make sure that there's compliance with the tax code. And if he doesn't do it, nobody's going to come after him, but he'll have to pay a penalty. There's no right to repayment, and the definition of a claim and a debt in the Bankruptcy Code is that you need to have a right to repayment. Isn't there a provision in Chapter 13, though, that specifically backs this out? Sorry, could you say that again? Isn't there a provision in Chapter 13 that specifically backs out these loan repayments? Oh, yes. Yeah, no, that's absolutely right. In 1322F, a debtor may deduct his 401k loan payments from his disposable income under Chapter 13, and that is eminently sensible. I mean, why it would be coming out at one end but not at the other end? What is the point of sending somebody into Chapter 13 if it's then backed out and there's no way he can make a plan once you back it out? Well, there's significant legislative history with regard to the Reform Act stating that the primary, or at least one of the primary goals of the Reform Act, was to ensure that debtors were paying back their creditors the maximum that they can afford. Well, I understand. So that's exactly what I'm saying, though. It seems to me that if you're over here in Chapter 7 and you don't count that, so then you're going to throw them into Chapter 13. Then you're going to get to Chapter 13 and you are going to count it, and so therefore in many instances you're going to conclude that he can't pay it back. I mean, maybe that puts all of the emphasis on this timing problem because the only thing they're accomplishing then is that he might be able to pay it back later. And so if you had a situation where the term of the repayment were longer, it would be a pointless exercise. Well, Congress certainly wanted to steer debtors towards Chapter 13. That's clear in the legislative history. This is one way of doing so. It's saying to debtors, yes, you can preserve your retirement period. But it turned out that the length of the repayment was a five-year period, was long enough that it wasn't going to do them any good. So now where is he? He's in limbo. Yeah, but that's not this case. What's the answer to that case? Does he go back to Chapter 7 at that point? No, you wouldn't need to go back to Chapter 7. I mean, you can confirm a Chapter 13 plan with no disposable income and no payments to creditors. There's some problem here. Yeah, I think that's the unusual case, though. For the most part, a debtor who wants to preserve their 401k loan repayment can do so under Chapter 13. They can finish making those payments and then put the disposable income that was going towards those payments towards their creditors. And in this case, the debtor could repay the entirety of the loan and then still pay off over 25 percent of his debt within the applicable commitment period. Isn't there any intent or purpose of the statute to make people take the money out and pay a tax penalty? That's not in anybody's interest, I assume. No, Congress is certainly interested in preserving debtors' retirement funds, but they wanted to do so in the context of Chapter 13. Chapter 13 allows the debtor to preserve their retirement funds while also ensuring that they're repaying their creditors. In the Chapter 7 context, there's immediate discharge of all of your unsecured debt. So even if the debtor were to finish paying off his loan, he then keeps the rest of his disposable income for himself and his creditors are left with no recourse. So that's the purpose of allowing the deduction in the Chapter 13 context because there are other mechanisms in place to make sure that, prospectively, the debtor is paying back the maximum they can afford to the creditor. Can I ask a question that's not related to what you just described, just a point of interest? The U.S. trustee noticed its intent to have the appeal heard by the district court. Why? As opposed to the bankruptcy appellate panel. Oh, I was part of those conversations. I don't remember us discussing why we're interested in the bankruptcy or more interested in the district court than the bankruptcy appellate panel. We did oppose the direct appeal to the Ninth Circuit primarily because we thought it was the kind of issue that could be explored in the district court first. But this court granted the appeal and we're happy to argue it before you now. No, I'm not talking about the 158D2 certification. I'm talking about when the notice of appeal was filed, as you're entitled to do, you requested that the appeal be heard by the district court as opposed to the bankruptcy appellate panel. I'm sorry, I'm not aware of why that decision was made. I can look into it and get back to you. Just as a point of information, the affirmance rate from district court to this court and from the BAP to this court is about the same. The rate of appeal is dramatically different. It's about half. It appears that people that go through the BAP accept the result. Often when it comes from district court, they don't. You may want to factor that in. I have some of my colleagues in the U.S. trustee's office here. You may want to factor that into your decision-making process. Do you have anything else for us? I do. I would like to respond. I have one other question. Still another topic. I'm trying to put pieces together. Let me start with a simple one. Is the 401K plan an asset of the estate? Can it be reached by the creditors? So is this going to whether it's a secured claim? We're just starting. Not the repayment, the plan itself. Suppose he'd never borrowed from the plan. He had the plan sitting there. Is it available as an asset that can be reached by the creditors? No, it is not. That's Section 54. And that doesn't change under Chapter 7 or Chapter 13, does it? No. Section 541 is applicable across the board. I raise that in this case because we do have somebody who draws down from that account at a time he doesn't have to in order to, in this case, it doesn't appear to be disputed, because he used it to try to pay his creditors and stave off the financial situation he found himself ultimately in. And it seems to me it may be an appropriate question as part of the totality of the circumstances. We don't have somebody who took money out of that account to go to Mexico for a vacation or whatever. He's paying off debts. He can't make that work. He can't stave off bankruptcy. He goes in. He wants to, okay, he could have saved that money for his retirement without touching it at all. Under this totality of circumstances test, isn't there some basis for saying, well, you know, he could have saved it. He tried. He should be allowed to keep that part, too. Isn't there a pretty strong argument for saying that maybe that money shouldn't be considered? I think at this point in the analysis we're within the discretion of the bankruptcy court. It's an abuse of discretion standard. But I think the response to that is he is welcome to continue paying his 401k loan payments while also declaring bankruptcy. And he can do that in the Chapter 13 context. The bankruptcy court here acknowledged that but said once he's done making those payments, the applicable commitment period will continue and he can pay off over 25 percent of his unsecured debt. And the equities in that context go towards moving into Chapter 13. I wanted to respond just quickly to something the opposing counsel had said. He was concerned about where the limits were in thinking about future financial resources. And this court addressed that issue in the price case. It's a pre-2005 case, but it addressed the meaning of totality of the circumstances and thinking about future financial resources. And it said that you're looking at reasonably reliable future financial resources. And so that's what's going on here, as Judge Clifton pointed out earlier. It's very clear that the payments are going to end. There's no dispute about that. And to the extent that we're talking about the length of time you're looking into the future, one of the things we're thinking about is ability to pay under Chapter 13. Chapter 13 lays out an applicable commitment period of three to five years. So it's reasonable to limit, I think, the inquiry to that time period. So I think those are all very easy issues to deal with. Are there any further questions? I don't see any. Thank you. Rebuttal? There's one point that the court just brought up. The fact that the 401K plan is exempt from reaching for creditors, isn't his payment back into that 401K plan? Shouldn't that also be exempt from the estate and not reachable by creditors? Because the government's taking the position that he's paying back his own money. He took his own money. He's paying it back. Why isn't the character of that money he's putting back into the fund exempt also? Under Lenten, it says the character of the transfer of the money never changes. Now, also as to the secured debt part of this, I'm still convinced that if it looks like a debt, it smells like a debt, it is a debt. And although you can't go back after Mr. Edgeburg for reimbursement or they can't sue him, they can go after the property of his under Home, what is it, Johnson v. Home State Bank. The U.S. Supreme Court. Johnson v. Home State Bank says that it's a debt if it can be collected against either the person or his property. That 401K plan is his property. So the creditor, that's the holder of the 401K, the administrator, can't sue my client for the money but can take his property. I'm not understanding that. How could he take his property? Because his property is a 401K. They could take the rest of it to pay back the loan. Who could take the property? The administrator of the 401K. In other words, if he doesn't take back, if he doesn't pay back. Let's assume you've got a 401K account that has $50,000 in it. He borrows $25,000. He can't pay it back. Are you saying the administrator can take the $25,000 out of his account? That's how he's going to go get it? No. What the administrator is going to do is charge it off to him automatically and take the tax hit, which in effect then causes a snowball effect where he is now paying the taxes. But he's not paying the money back. No, but he's taking the taxes on it. But not of his choice. I'm sorry? Not of his choice. Right, but he's keeping the money. That's true. And the fact that taxes are then due is an external fact having to do with the tax debt. Well, but it's an external fact caused by the creditor, not by the debtor. That's a part of my problem with that. Wouldn't there be taxes? Suppose that debt, could that debt be discharged? No. No. Not for three years and two years. There's some circumstances of discharging taxes. Last point in my 15 seconds is that there was no $10 to put into the plan here for 17 months. He was already under $250 a month. But that's just an appeal of the Chapter 13 plan. Not the Chapter 13, but the potential Chapter 13 plan. You can go to Chapter 13 and argue about that, right? Well, you can't go into a Chapter 13 if you're over on your I&J, if you're underwater on your I&J. It's a bad faith to file a Chapter 13 plan where I can't put any money into it. That's actually the question I was asking her before. Yeah, it's bad faith. But so what does happen then? Suppose you get there and they say you can't do this. They convert you back to a 7. Right, so I suppose that's what you do. Yeah, well. If the shot doesn't work, you come back. Yeah, but then they're going to move for dismissal again because he shouldn't be in the 7. But at that point, it seems to me that they can't do that. But it's bad faith on my part to propose a Chapter 13 plan where the debtor clearly has no disposable income. We do 0% plans all the time to the unsecured, but that presumes there's at least, like, $20 left over to go to, like, a mortgage payment or something they're behind on. But here there was no money left over to put into the 13, so it's bad faith on my part. Whether that was true or whether that was fees that you were counting in or so on. We need another hour. Okay. Thank you both for your arguments. The case just argued will be submitted for decision and will proceed to the United States of America against $186,416 in U.S. currents.
judges: Hawkins, Berzon, Clifton